# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Carlyn Attama,<br><br>            Plaintiff,<br><br>vs.<br><br>Jain Properties, LLC, Anil Jain, Aaroosh Jain, Place Property Management LLC<br><br>            Defendants. | Case No. 0:22-cv-1812<br><br><br><br>**COMPLAINT** |

## NATURE OF ACTION

1.      Plaintiff Carlyn Attama brings this action for declaratory, injunctive, and monetary relief against an Anoka County landlord, Anil Jain, his business entity, Jain Properties, LLC, and his business associates Aaroosh Jain and Place Property Management LLC, for discrimination on the basis of sex (sexual harassment, sex discrimination, and retaliation) in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et seq. and the Minnesota Human Rights Act, Minn. Stat. § 363A, et seq., for negligent supervision, and for violations of Minn. Stat. § 504B.178.

2.      Throughout Ms. Attama's tenancy, Defendant Anil Jain has subjected her to unwelcome sexual remarks and inquiries, unwanted physical touch, and intimidation.

1

Defendant Anil Jain's conduct, which spanned the entirety of Ms. Attama's tenancy and ultimately led her to leave the property, represents a continuing violation of federal and state fair housing laws.

3.     Ongoing harassment throughout her tenancy led to Ms. Attama feeling unsafe in her own home, and Defendants' retaliation for her leaving the property resulted in her family's homelessness.

4.     Through their unlawful and discriminatory actions, Defendants have violated Plaintiff's right to be free from discrimination on the basis of sex and constitutes negligent supervision of Defendant Anil Jain.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 3613.

6.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise out of the same transactions as Plaintiff's federal claim, such that it is part of the same case or controversy.

7.     Venue is proper in this district under 28 U.S.C. § 1391 because part of the events or omissions giving rise to the claims occurred within this District, Plaintiff resided in the District of Minnesota, and Defendants resided in and had a principal address and principal place of business in the District of Minnesota.

## PARTIES

8.     Plaintiff Carlyn Attama is a 39-year-old woman residing in Hennepin County.

Defendant Jain Properties, LLC

9.     Defendant Jain Properties, LLC is a company that owns residential property in Anoka County. The company is organized and conducts business in Minnesota.

10.     Jain Properties, LLC is the owner of 14641 Rhinestone Street NW, Ramsey, MN 55303 ("Property"), where Plaintiff Carlyn Attama lived as a tenant.

11.     Upon information and belief, Defendant Anil Jain acts as an agent and property manager for properties owned by Jain Properties, LLC.

12.     In acting or omitting to act as alleged herein, Defendant Jain Properties, LLC was acting through its employees and/or agents and is liable on the basis of the acts and omissions of its employees and/or agents.

13.     In acting or omitting to act as alleged herein, each employee or officer of Defendant Jain Properties, LLC was acting within the course and scope of their actual or apparent authority, or the alleged acts or omissions of each employer or officer as agent were subsequently ratified and adopted by Defendant as principal.

Defendant Anil Jain

14.     Defendant Anil Jain resides in Maple Grove, Minnesota.

15.     Defendant Anil Jain is the manager of Jain Properties, LLC.

16.     Defendant Anil Jain acted as landlord of the Property and was responsible for management activities, including securing tenants, collecting rent payments, resolving billing disputes, providing tax forms, and scheduling maintenance and repairs.

17.     Defendant Anil Jain signed as the Landlord on the lease Ms. Attama entered at the Property.

Defendant Aaroosh Jain

18.     Defendant Aaroosh Jain resides in Minneapolis, Minnesota.

19.     Defendant Aaroosh Jain is the sole owner and principal officer of Place Property Management LLC.

20.     Defendant Aaroosh Jain managed the Property during Ms. Attama's tenancy and was responsible for management activities, including collecting rent payments, managing Ms. Attama's ledger, and scheduling inspections, maintenance, and repairs.

Defendant Place Property Management LLC

21.     Defendant Place Property Management LLC is a company that manages residential property in Anoka County and throughout Minnesota. The company is organized and conducts business in Minnesota.

22.     Upon information and belief, the Property was managed by Place Property Management LLC.

23.     On the lease for Ms. Attama's tenancy at the Property, Jain Realty & Property Management is listed as the manager of the property.

24.     On February 13, 2013, Jain Realty & Management LLC changed its name to Place Property Management LLC, removed Anil Jain as an owner and officer, made Aaroosh Jain its sole owner and principal officer, and retained Travis Jacobson as an officer.

## FACTUAL BACKGROUND

25.     On November 1, 2018, Ms. Attama and her four children began renting a townhouse from Defendant Jain Properties, LLC. The house was located in Anoka County at 14641 Rhinestone Street NW, Ramsey, Minnesota 55303 ("Property").

26.     Ms. Attama's primary point of contact at Defendant Jain Properties, LLC throughout her tenancy was Defendant Anil Jain.

27.     Ms. Attama's primary point of contact at Defendant Place Property Management LLC was Defendant Aaroosh Jain.

28.     When Ms. Attama began her tenancy at the Property, she had a rental subsidy through the Housing Trust Fund Rental Assistance Program that paid a portion of her monthly rent.

29.     Her rental subsidy was administered by Metro Housing & Redevelopment Authority ("Metro HRA").

30.     The term of Ms. Attama's initial lease was 6 months, commencing on November 1, 2018 and terminating on April 30, 2019. A copy of this lease was provided to Metro HRA.

Harassment During the Tenancy

31.     When Ms. Attama picked up the keys to move into the rental property, Defendant Anil Jain informed her that he was changing the lease to a month-to-month lease. He gave her a copy of the lease with the agreed upon duration crossed out and changed to month-to-month. Ms. Attama did not agree to change the lease term. Further,

Defendant Anil Jain failed to report this change to Metro HRA, which he was required to do under the Rental Subsidy Contract between the parties.

32.     Defendant Anil Jain often referenced the fact that Ms. Attama had a month-to-month lease and that he could tell her to leave at any time. Ms. Attama felt threatened and insecure in her housing based on these comments that expressly stated her tenancy was at Defendant Anil Jain's whim. Ms. Attama requested a year lease on multiple occasions, but Defendant Anil Jain refused.

33.     Throughout her tenancy from November 2018 to October 2021, Defendant Anil Jain frequently made unwelcome remarks about Ms. Attama's body, including "You look cute," "Your dress is nice," "You smell nice," and "Your boyfriend is lucky." Defendant Anil Jain made unwelcome remarks both when he saw Ms. Attama in person to pay rent and when Ms. Attama called him to discuss repairs.

34.     Throughout her tenancy from November 2018 to October 2021, Defendant Anil Jain repeatedly made unwelcome inquiries of Ms. Attama regarding her relationship status, including asking if she had a boyfriend and asking questions about her boyfriend throughout conversations about rent payments or repair issues. For example, when Ms. Attama had difficulties paying rent, he would ask if her boyfriend could help her pay or if he was not capable of supporting her. Ms. Attama did not have a boyfriend, but she did not feel safe letting Defendant Anil Jain know that she was alone.

35.     Throughout her tenancy from November 2018 to October 2021, Defendant Anil Jain repeatedly compared himself to Ms. Attama's boyfriend and implied that he would be a better boyfriend. When Ms. Attama visited Defendant Anil Jain's office,

6

located inside his personal home, Defendant Anil Jain would often talk about his wealth

and how he could do anything for her. Defendant Anil Jain told Ms. Attama that he was

more capable of providing for her, that she could be "his girl," and he could take care of

her. Defendant even mentioned that he could provide employment for Ms. Attama at one

of his childcare centers. Ms. Attama felt that he was only offering employment as another

way to control and get close to her.

36.     The rental office address for Jain Properties, LLC is 17816 93rd Pl, Maple

Grove, Minnesota 55311. This is also the address of Defendant Anil Jain's residential

home.

37.     Throughout her tenancy from November 2018 to October 2021, Defendant

Anil Jain often requested Ms. Attama to come to the rental office to conduct business

relating to her tenancy, which required Ms. Attama to go to Defendant Anil Jain's

personal home. When Ms. Attama came to the rental office (his house), Defendant Anil

Jain would insist on discussing business inside. Inside the house, Defendant conducted

business out of a room referred to as his office. Inside the office, Defendant Anil Jain

would stand very close to Ms. Attama, invite her to stand close to him, and often touched

her back and shoulders without her consent. Defendant Anil Jain would rub her upper

back and run his hand up and down her back in a sexually suggestive manner.

38.     In Spring 2019, Ms. Attama visited Defendant Anil Jain's house to pick up

her Certificate of Rent Paid ("CRP") from the office. When Defendant Anil Jain

answered the door to the house, he grabbed Ms. Attama's shoulder and asked her to go

wait inside his office. Defendant Anil Jain followed her inside the office and massaged

7

her neck and shoulders. Ms. Attama asked Defendant Anil Jain what he was doing, and Defendant Anil Jain tried to laugh it off, and proceeded to make unwelcome remarks about her body, saying "You needed a massage" and "You look tired but you're still beautiful." After Ms. Attama obtained the CRP form, she began to leave the office when Defendant Anil Jain grabbed her around the back to prevent her from leaving, asking "Why are you in a hurry?" and "Are you rushing to your boyfriend?" Ms. Attama continued to leave, at which point, Defendant Anil Jain grabbed her shoulders from behind. Ms. Attama turned around and told Defendant Anil Jain that she did not want to be touched. In response, Defendant Anil Jain began rubbing her back while saying her name repeatedly.

39. When Ms. Attama was late with a rental payment, Defendant Anil Jain would call her asking about her rent and how she would pay it. When Ms. Attama received these calls from Defendant Anil Jain, he spoke in a low, quiet, flirtatious tone and asking, "What do you need?" and telling her "Just open up to me," "I have helped a lot of people," "I can do anything for you," "There are other options," "You are special," and "I'm here for you."

40. Ms. Attama felt uncomfortable during these calls due to the implication that Defendant Anil Jain wanted a sexual arrangement to satisfy her rent payment.

41. In Spring 2019, Ms. Attama began looking for other housing because she felt uncomfortable, afraid, and nervous about her housing situation due to Defendant Anil Jain's ongoing harassment.

42.    On September 9, 2019, Defendant Anil Jain texted Ms. Attama when he did not receive her rent check for September stating:

"Please call me to discuss

Otherwise once it goes to the court it gets expensive

I have resolved lot of previous tenants

Please do not be afraid

No communication is the worst thing you can do"

43.    On or about January 2020, Ms. Attama visited Defendant Anil Jain's office (house) to discuss rent payment discrepancies. Defendant Anil Jain pulled up the rent ledger on his computer, and he motioned for Ms. Attama to sit on his lap to look at the computer. When Ms. Attama attempted to pull up another chair instead, Defendant Anil Jain got up from his chair and let her sit there. Once Ms. Attama was seated in front of the computer, Defendant Anil Jain stood behind her and leaned over her with his arm against the table while breathing heavily on her neck. These actions made Ms. Attama extremely uncomfortable, so she asked Defendant Anil Jain to send her the document by email and left.

44.    After this incident, Ms. Attama requested that she pay rent by another means in the future rather than in person at Defendant Anil Jain's home.

45.    In 2020, Defendant Anil Jain found out that Ms. Attama was trying to move.

46.     Defendant Anil Jain offered to buy Ms. Attama a house and assured her that he could look after her. Defendant Anil Jain told her that he had "taken care of" his renters in the past.

47.     As the tenancy progressed, Ms. Attama became concerned that Defendant Anil Jain was visiting her house without her knowledge and violating her privacy.

48.     One day while Ms. Attama was home alone, she heard footsteps in the house. When she went downstairs to investigate, she heard quick movement and then her front door close. Ms. Attama ran upstairs to a bedroom window facing the street and saw a truck leaving from in front of her house that she believed belonged to Defendant Anil Jain because it looked like the truck Defendant Anil Jain drove when Ms. Attama moved into the property.

49.     Ms. Attama began noticing items in her house had been moved or went missing. After coming home from work, Ms. Attama would notice items moved on her kitchen counter and in the garage. On one occasion, Ms. Attama noticed she was missing multiple items of underwear. Shortly after, Ms. Attama noticed the extra garage key on the kitchen counter was missing.

50.     At this point, Ms. Attama became extremely concerned that Defendant Anil Jain was entering the house without notice or a business purpose. Due to previous unwelcome sexual advances by Defendant Anil Jain, Ms. Attama became uncomfortable at home alone, began locking her bedroom door for additional safety, and had difficulty sleeping, including experiencing disturbing nightmares about Defendant Anil Jain entering the house and raping her.

51.     In Spring 2021, Ms. Attama called Defendant Anil Jain to request repair of the kitchen sink's water pressure and garbage disposal. During the call, Defendant Anil Jain requested that Ms. Attama turn on her phone's video, asking her, "Don't you video call your boyfriend?" Ms. Attama told Defendant Anil Jain that she did not have a phone camera because she did not feel comfortable having a video call with him.

52.     Beginning in May 2021 through October 2021, Ms. Attama experienced financial difficulties, fell behind on rent, and awaited approval of her application for emergency financial assistance from RentHelpMN.

53.     Throughout this period, Defendant Anil Jain would call Ms. Attama around the time rent was due saying, "Let me know what you need. We can work this out."

54.     Ms. Attama felt uncomfortable during these calls due to Defendant Anil Jain's implication that he wanted a sexual arrangement.

55.     On July 21, 2021, Ms. Attama was informed that Defendant Aaroosh Jain was assuming management of 14641 Rhinestone Street NW.

56.     Despite the change in property management, Defendant Anil Jain continued to manage all aspects relating to Ms. Attama's tenancy.

57.     On August 31, 2021, Metro HRA contacted Defendant Anil Jain to provide notice to Defendant Jain Properties, LLC that Metro HRA would stop payment by October 31, 2021 because Ms. Attama was moving. The letter requested notification from Defendant Jain Properties LLC and Defendant Anil Jain if they had not already received notice from Ms. Attama.

58. After receiving the notice from Metro HRA, Ms. Attama received multiple phone calls from Defendant Anil Jain, who yelled at her and berated her for moving. Defendant Anil Jain asked Ms. Attama why she was moving and where she was moving to. Defendant Anil Jain told Ms. Attama that she couldn't move until he gave her permission and that Ms. Attama needed him to get new housing. Defendant Anil Jain threatened Ms. Attama that he would make it hard for her to find a place and make her family homeless. Defendant Anil Jain also threatened to contact Metro HRA to make her lose her voucher by telling them she wasn't paying her rent portion, even though he knew Ms. Attama had a pending RentHelpMN application.

59. On September 22, 2021, Ms. Attama notified Defendant Anil Jain by email that she planned to move out by the end of October 2021.

60. On September 22, 2021, Defendant Anil Jain responded with a lease nonrenewal notice terminating the tenancy on November 30, 2021.

61. In a letter addressed to Defendant Anil Jain and dated October 1, 2021, Ms. Attama wrote:

"I think you are doing all this because of my situation knowing that it would be difficult if not impossible to find a new place without a job or income i rather squat with someone than stay in your house. I don't feel safe in that house anymore especially with your recent behavior lately, you have been creeping me out."

62. On October 31, 2021, Ms. Attama and her children vacated the Property.

63. Since Ms. Attama did not have a lease secured at another property, she checked into a hotel with her children.

Retaliatory Action for Vacating Property

*Defendants' Actions Leading to Denial by Nova Apartments*

64.     On August 4, 2021, Ms. Attama submitted a rental application to Nova Apartments.

65.     Nova Apartments requires submission of a landlord verification form from previous landlords within 36 months.

66.     Ms. Attama provided Defendant Jain Properties, LLC's and Defendant Anil Jain's contact information to Nova Apartments for the purpose of completing the required landlord verification form.

67.     Upon information and belief, Nova Apartments made multiple attempts to contact Defendant Anil Jain to complete this form.

68.     On November 5, 2021, Nova Apartments informed Ms. Attama that the landlord verification form had not been completed by Defendant Jain Properties, LLC or Defendant Anil Jain.

69.     On November 30, 2021, Nova Apartments informed Ms. Attama that if it did not receive the landlord verification, it would cancel Ms. Attama's application.

70.     Upon information and belief, Defendant Jain Properties, LLC and Defendant Anil Jain did not respond to requests to complete landlord verification forms required by Nova Apartments in time for Ms. Attama to secure housing after leaving the Property. Further, Defendants' failure to respond to requests for landlord verification resulted in the closing of Ms. Attama's rental application at Nova Apartments.

*Defendants' Actions Leading to Denial by Cutters Grove*

71.     On or about November 12, 2021, Ms. Attama applied to rent an apartment at Cutters Grove Apartments.

72.     Ms. Attama's rental application for Cutters Grove was denied based on negative information in her tenant screening report provided by Rental History Reports, Inc.

73.     The tenant screening report used to deny Ms. Attama housing included a negative reference from Defendant Anil Jain that he would not rent to Ms. Attama again.

74.     The tenant screening report also listed $1922 was owed from the tenancy.

75.     Ms. Attama did not owe any money to Defendant Jain Properties, LLC at the conclusion of her tenancy at the Property.

76.     As of May 2021, Ms. Attama's rental subsidy paid $1201 per month of her $1550 monthly rent. Ms. Attama's portion of rent was $349.

77.     In May 2021, Ms. Attama applied for rental assistance through RentHelpMN to cover her outstanding balance at the Property and future rent through October 2021.

78.     RentHelpMN approved the rental assistance application for $7,300, and these funds were disbursed to Defendant Jain Properties, LLC.

79.     On October 4, 2021, these funds were credited to Ms. Attama's ledger.

80.     As of October 4, 2021, Ms. Attama's ledger showed an outstanding balance of $248, including a $124 late fee for August 2021 and $124 late fee for September 2021 billed by the landlord after submitting the ledger to RentHelpMN for reimbursement.

81.    Defendant Jain Properties, LLC was not entitled to these late fees from Ms. Attama. Ms. Attama's portion of rent was $349, and a $124 late fee exceeds the statutory maximum of 8% of late rent permitted under Minn. Stat. § 504B.177.

82.    Further, Defendant Jain Properties, LLC requested reimbursement from RentHelpMN for rent not due and withheld by Metro HRA beginning in July 2021.

83.    Upon information and belief, Defendant Jain Properties, LLC failed its annual Housing Quality Standards inspection in September 2020 and did not make the repairs required by Metro HRA to resume subsidy payments.

84.    Upon information and belief, Metro HRA did not terminate the rental subsidy contract with Defendant Jain Properties, LLC following the failed inspection due to flexibilities in place due to the COVID-19 pandemic and continued to pay its portion of the rent until July 2021.

85.    Upon information and belief, in requesting reimbursement from RentHelpMN, Defendant Jain Properties, LLC provided a ledger statement prepared by Defendant Place Property Management to RentHelpMN that included amounts not owed by Plaintiff, including Metro HRA's withheld portion of rent and late fees on Metro HRA's withheld portion of rent.

86.    Further, the outstanding balance of $1922 reported on Ms. Attama's tenant screening report was never billed to Ms. Attama and does not appear on the rental ledger she received from Defendant Place Property Management in March 2022 after the end of her tenancy.

87.     The outstanding balance on Ms. Attama's account was not owed, and no amount should have been reported as outstanding to tenant screening companies.

Failure to Return Security Deposit

88.     Upon moving into the Property, Ms. Attama paid a security deposit of $1550.

89.     Ms. Attama's 6-month lease terminated on April 30, 2019. The lease was not renewed by the parties, and the parties did not enter a holdover tenancy according to the terms of the lease, which dictated a corresponding rent increase of 150%. Ms. Attama continued to reside at the Property and pay the same monthly contract rent, thus creating a tenancy at will.

90.     On September 22, 2021, Ms. Attama notified Defendant Anil Jain by email that she planned to move out by the end of October 2021. Ms. Attama gave one-month written notice as required by Minn. Stat. § 504B.135, which governs terminating a tenancy at will.

91.     Ms. Attama thoroughly cleaned the unit prior to vacating the Property.

92.     As of November 1, 2021, Ms. Attama and her family were residing at the AmericInn Coon Rapids at 3430 Northdale Blvd, Coon Rapids, MN 55448.

93.     On November 5, 2021, Ms. Attama contacted Anil Jain by text message to inquire about where to drop off her keys. Ms. Attama's inquiry also stated that "I was wondering when you will reach out considering the fact that I was due to move on 31st of October" and affirmed "I'm all moved out."

16

94.     On November 6, 2021, Ms. Attama contacted Defendant Aaroosh Jain by text message to inquire about how to drop off her keys, stating that "AJ is not responding" in reference to her attempts to contact Defendant Anil Jain.

95.     On November 8, 2021, Ms. Attama received a notification from her rental portal informing her that the property manager had changed her lease term to November 1, 2018 through November 7, 2021.

96.     On November 13, November 15, and November 22, 2021, Ms. Attama contacted Defendant Anil Jain and Defendant Aaroosh Jain individually by text message to request return of her security deposit.

97.     On November 15, 2021, Defendant Aaroosh Jain replied by text message to Ms. Attama that the apartment "was left in pretty poor condition" and that "We legally have three weeks."

98.     Ms. Attama did not receive either return of her security deposit or a written statement explaining the specific reasons for withholding the security deposit within three weeks of the termination of her tenancy on October 31, 2021.

99.     On November 22, 2021, Defendant Anil Jain replied by text message that she had an outstanding balance of $1922 and that he intended to use Ms. Attama's security deposit to cover the "outstanding balance and any expenses." Ms. Attama replied that she was not aware of any outstanding balance and requested the statement of the expenses be sent to her email.

100.     On November 22, 2021, Defendant Aaroosh Jain replied by text message to Ms. Attama: "There will be no refund given as you owe back rent."

101.    On November 23, 2021, Ms. Attama received an email from Defendant Anil Jain in response to her request for return of her security deposit. In the email, Defendant Anil Jain stated that she failed to provide a 60-day written notice to vacate under the lease, that she left the unit in "bad shape," and that they needed to replace the carpet. Further, Defendant Anil Jain stated that he would send a "summary and statement showing if you have any deposit left over or you owe us any money."

102.    Ms. Attama never received a specific statement of deductions from her security deposit. Ms. Attama contests that any amount of her deposit should be withheld.

103.    Ms. Attama contests Defendants' claim that she did not provide proper notice to vacate based on her compliance with state law in providing written notice of one rental period to terminate the tenancy at will.

104.    Ms. Attama contests Defendant's claim that she left the unit in poor condition beyond normal wear-and-tear.


**INJURY TO PLAINTIFF**

105.    Defendant Anil Jain's actions in repeatedly making unwelcome sexual advances, as described above, have caused Plaintiff injuries, both emotional and financial.

106.    As a direct, proximate, and foreseeable result of Defendant Anil Jain's persistent and flagrant harassment, Plaintiff has suffered and continues to suffer emotional distress, loss of housing opportunities, and the deprivation of her housing and civil rights.

107.   In addition to the emotional distress that Ms. Attama suffered, Plaintiff has suffered economic loss as a direct, proximate, and foreseeable result of Defendants' discriminatory conduct. These losses include but are not limited to: being forced to look elsewhere for housing to avoid renting from Defendants; being denied housing opportunities due to Defendant Anil Jain's retaliation for rejecting sexual advances and vacating the property; all Defendants' withholding of security deposit; and other harms.

108.   Defendant Anil Jain's unlawful actions as described herein were, and remain, intentional, willful and knowing, and/or have been, and are, implemented with callous and reckless disregard for Plaintiff's legal rights.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Against Defendant Anil Jain and Defendant Jain Properties, LLC)

### Violation of Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

109.   Plaintiff repeats and incorporates by reference all allegations contained in paragraphs 1 through 108 as if fully set forth herein.

110.   Defendant Anil Jain's conduct towards Ms. Attama while acting as an agent of Defendant Jain Properties, LLC constituted quid pro quo harassment. Defendant Anil Jain made unwelcome requests or demands to engage in sexual conduct where submission to the request or demand, either explicitly or implicitly, was made a condition related to the rental or availability of a dwelling; the terms, conditions, or privileges of the rental; and/or the provision of services or facilities in connection to the rental.

111.   Defendant Anil Jain's actions towards Ms. Attama while acting as an agent of Defendant Jain Properties, LLC constituted hostile environment harassment. Defendant Anil Jain engaged in unwelcome conduct that was sufficiently severe or pervasive as to interfere with: the availability, rental, or use or enjoyment of a dwelling; the terms, conditions or privileges of the rental; and/or the provision or enjoyment of services of facilities in connection to the rental.

112.   Defendant Anil Jain's conduct towards Ms. Attama while acting as an agent of Defendant Jain Properties, LLC violated multiple provisions of the Fair Housing Act (FHA), including:

113.   Discrimination in the terms, conditions or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of Section 804(b) of the FHA, 42 U.S.C. § 3604(b);

114.   Coercion, intimidation, threats or interference with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights under Section 804 of the FHA, in violation of Section 818 of the FHA, 42 U.S.C. § 3617.

115.   Plaintiff has been injured by the discriminatory conduct of Defendants. Plaintiff is an "aggrieved person" as defined in 42 U.S.C. § 3602(i) and has suffered damages as a result of Defendants' conduct.

116.     Defendant Anil Jain's actions towards Ms. Attama, including but not limited to the conduct described above, constituted unwelcome sexual harassment and were directed at Ms. Attama because of her sex in violation of the Fair Housing Act.

117.     The conduct of Defendant Anil Jain was intentional, willful, and/or taken in reckless disregard for Plaintiff's rights.

118.     Defendant Anil Jain and Defendant Jain Properties, LLC are jointly and severally liable for their conduct in violation of the federal Fair Housing Act.

## SECOND CAUSE OF ACTION

### (Against Defendant Anil Jain and Defendant Jain Properties, LLC)

### Violation of Minnesota Human Rights Act, Minn. Stat. § 363A, *et seq.*

119.     Plaintiff repeats and incorporates by reference all allegations contained in paragraphs 1 through 118 as if fully set forth herein.

120.     Defendant Anil Jain's conduct towards Ms. Attama while acting as an agent of Defendant Jain Properties, LLC violated multiple provisions of the Minnesota Human Rights Act, Minn. Stat. § 363A, *et seq.*, including:

121.     Discrimination in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of Minn. Stat. § 363A.09;

122.     Retaliation or discrimination against persons because they have opposed practices forbidden under the statute, in violation of Minn. Stat. § 363A.09 and § 363A.15.

123.   Defendant Anil Jain's actions towards Ms. Attama, including but not limited to the actions described above, were directed at Ms. Attama because of her sex in violation of the Minnesota Human Rights Act.

124.   The conduct of Defendant Anil Jain was intentional, willful, and/or taken in reckless disregard for Plaintiff's rights.

125.   Defendant Anil Jain and Defendant Jain Properties, LLC are jointly and severally liable for their conduct in violation of the Minnesota Human Rights Act.

### THIRD CAUSE OF ACTION

### (Against Defendant Jain Properties, LLC)

### Negligent Supervision

126.   Plaintiff repeats and incorporates by reference all allegations contained in Paragraphs 1 through 125 as if fully set forth herein.

127.   Defendant Jain Properties, LLC owns the property located at 14641 Rhinestone St. NW, Ramsey, MN 55303 and rented by Ms. Attama. In those capacities, the corporation owners, managers, agent and/or landlord knew or should have known of Defendant Anil Jain's misconduct set forth above and failed to take sufficient steps to remedy it.

128.   Defendant Anil Jain was the manager and landlord of the Property during Ms. Attama's tenancy. Defendant Anil Jain is also the manager of Defendant Jain Properties, LLC.

129.   Defendant Jain Properties, LLC failed to exercise ordinary care in supervising Defendant Anil Jain and failed to prevent the foreseeable misconduct towards Ms. Attama.

130.   Defendant Anil Jain's misconduct toward Ms. Attama occurred when he was acting as manager, agent and/or landlord of the Property, and was in the scope of his agency or employment.

131.   As a result of Defendant Jain Properties, LLC's negligent supervision of Defendant Anil Jain, Ms. Attama was damaged.

## FOURTH CAUSE OF ACTION

### (Against All Defendants)

### Violations of Minn. Stat. § 504B.178

132.   Plaintiff repeats and incorporates by reference all allegations contained in Paragraphs 1 through 131 as if fully set forth herein.

133.   Defendants' conduct violated Minn. Stat. § 504B.178, subd. 3(a) by failing to return Ms. Attama's security deposit or provide a written statement explaining the specific reasons for withholding the security deposit within three weeks of the termination of Ms. Attama's tenancy and Ms. Attama's provision of delivery instructions to Defendant Anil Jain to send a written statement and bill by email.

134.   Defendants' conduct violated Minn. Stat. § 504B.178, subd. 3(b) by withholding from the security deposit amounts not due to Defendants from Ms. Attama.

135.   All Defendants are jointly and severally liable for their conduct in violation of Minn. Stat. § 504B.178.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

- Declaring that Defendants' actions violate the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.* and the Minnesota Human Rights Act, Minn. Stat. § 363A, *et seq.*;

- Permanently enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

- Awarding compensatory damages to Plaintiff in an amount to be determined by a jury that would fully compensate Plaintiff for the injuries caused by the conduct of Defendants;

- Awarding punitive damages to Plaintiff, under Section 813 of the federal Fair Housing Act, 42 U.S.C. § 3613(c)(1), in an amount to be determined by a jury that would punish Defendants for the willful, wanton, and reckless conduct of Defendants alleged herein; and that would effectively deter similar conduct in the future;

- Awarding Plaintiff damages for Defendants' violations of Minn. Stat. § 504B.178;

- Awarding Plaintiff return of her security deposit;

- Awarding reasonable attorneys' fees and costs; and

• Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. Pr. 38(b), Plaintiff demands a trial by jury on all issues triable as of right.

Dated: July 18, 2022

**Central Minnesota Legal Services**

By: */s/ Rebecca Hare*
Rebecca Hare (#0401814)
111 North Fifth Street, Suite 402
Minneapolis, MN 55403
Telephone: (612) 746-3797
Email: rhare@centralmnlegal.org

**Mid-Minnesota Legal Aid**

By: */s/ Rebecca Stillman_____*
Rebecca Stillman (#398550)
111 North Fifth Street, Suite 100
Minneapolis, Minnesota. 55403
Telephone: (612) 746-3759
Email: rstillman@mylegalaid.org

*Attorneys for Plaintiff*